## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Equal Employment Opportunity Commission<br>801 Market St., Suite 1300<br>Philadelphia, PA 19107 | )<br>)<br>)<br>) | Civil Action No._____ |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT** |
| Estee Lauder Companies, Inc.<br>767 Fifth Ave.<br>New York, NY 10153 | )<br>)<br>)<br>) | JURY TRIAL DEMAND |
| Defendant. | )<br>) | |

## I. NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, as well as the Equal Pay Act of 1963 ("Equal Pay Act"). The action is brought to correct unlawful employment practices on the basis of sex and to restrain and correct the unlawful payment of wages to employees of one sex at rates less than that paid to employees of the opposite sex, and to provide appropriate relief to Charging Party Christopher Sullivan and similarly aggrieved individuals subjected to unlawful sex discrimination and unequal wages pursuant to Defendant Estee Lauder Companies, Inc.'s ("Estee Lauder") Parental Leave Policies.

As is alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("EEOC") alleges that Estee Lauder discriminated against Charging Party and similar aggrieved individuals because of and on the basis of sex, in violation of both Title VII and the Equal Pay Act. The aggrieved individuals are all male employees who as

biological fathers sought and/or were provided parental leave benefits by Defendant pursuant to its Parental Leave Policies, which provide biological fathers lesser benefits for purposes of child bonding than are provided biological mothers. This discrimination extends to biological fathers who are employed in the same positions and perform equal work to that performed by biological mothers but nevertheless receive wages, in the form of parental leave benefits, at a lesser rate than such biological mothers.

## II. JURISDICTION AND VENUE

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and also pursuant to Sections 15(a)(2), 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 215(a)(2), 216(c) and 217, to enforce the requirements of the Equal Pay Act, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2.   Venue is proper in the United States District Court for the Eastern District of Pennsylvania as the employment practices alleged to be unlawful were and are being committed throughout the United States, including within the jurisdiction of this Court. *See* 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391.

## III. PARTIES

3.   Plaintiff, the U.S. Equal Employment Opportunity Commission (the "EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of the Equal Pay Act and Title VII, and is expressly authorized to bring this action by Sections 16(c) and 17 of the FLSA, 29 U.S.C.

§§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92

Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705, and by Sections 706 of Title

VII, 42 U.S.C. § 2000e-5.

4.     Defendant is a Delaware corporation headquartered in New York City that, at all relevant

times, has been doing business throughout the United States, including in the

Commonwealth of Pennsylvania.

5.     At all relevant times Defendant has continuously had at least 15 employees.

6.     At all relevant times Defendant has continuously been an employer engaged in an

industry affecting commerce under Sections 701 (b), (g) and (h) of Title VII, 42 U.S.C.

§§ 2000e(b), (g), and (h).

7.     At all relevant times Defendant has acted directly or indirectly as an employer in relation

to employees and has continuously been an employer within the meaning of Section 3(d)

of the FLSA, 29 U.S.C. § 203(d).

8.     At all relevant times Defendant has continuously employed employees engaged in

commerce or in the production of goods for commerce within the meaning of Sections

3(b), (i), and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i), and (j) and has continuously been

an enterprise engaged in commerce or in the production of goods for commerce within

the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that the

enterprise has employees engaged in commerce or in the production of goods for

commerce, or that has employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person; and has

continuously been an enterprise whose annual gross volume of sales made or business

done is not less than $500,000.

## IV. CONDITIONS PRECEDENT

9.    More than thirty days prior to the institution of this lawsuit, Charging Party Christopher

Sullivan filed with the EEOC Charge No. 570-2015-01589 alleging Defendant was

discriminating on the basis of sex in provision of parental leave benefits.

10.   On March 23, 2017, the EEOC issued to Defendant a Letter of Determination finding

reasonable cause to believe that Defendant had discriminated against Sullivan because of

sex pursuant to its Parental Leave Policies.

11.   In its Letter of Determination, the EEOC further found reasonable cause to believe that

pursuant to its Parental Leave Policies Defendant was engaged in ongoing, nationwide

sex discrimination harming full-time male employees in violation of Title VII and the

Equal Pay Act.

12.   The EEOC engaged in communications with Defendant to provide Defendant the

opportunity to remedy the discrimination described in the Letter of Determination.

13.   The EEOC was unable to secure from Defendant a conciliation agreement acceptable to

the Commission.

14.   On May 16, 2017, the EEOC issued to Defendant a Notice of Conciliation Failure.

15.   All conditions precedent to the institution of this lawsuit have been fulfilled.

## V. STATEMENT OF CLAIMS

### Parental Leave Benefits

16.   Prior to adoption of the Parental Leave Policies, Estee Lauder provided biological

mothers with six to eight weeks of partial to full paid leave to recover from any medical

or physical limitations attendant to the birth of a child resulting in temporary work-

disability.  This medical or physical disability-related paid leave was provided as part of Estee Lauder's Short Term Disability ("STD") Plan.

17.  Estee Lauder adopted and began applying its Parental Leave Policies effective July 1, 2013, and continues to apply them.

18.  The Parental Leave Policies apply to all U.S. based full-time, benefit eligible employees who have been employed for at least 90 days (hereinafter "eligible" persons).

19.  The Parental Leave Policies are comprised of four paid parental leave benefits and a transition back-to-work benefit.

20.  The Parental Leave Policies' four paid parental leave benefits are maternity leave, adoption leave, primary caregiver leave, and secondary caregiver leave.

21.  The Parental Leave Policies' four paid parental leave benefits provide either six weeks (maternity, adoption, and primary caregiver) or two weeks (secondary caregiver) of paid parental leave.

22.  The Parental Leave Policies' paid parental leave benefits of maternity leave, adoption leave, primary caregiver leave, and secondary caregiver leave are all provided for the purpose of enabling parents to bond with their new children.

23.  The Parental Leave Policies' transition back-to-work benefit is a four-week flexibility period, commencing at the end of the employee's parental leave, during which the employee is entitled to flexible scheduling and work arrangements, designed in conjunction with his or her manager.

24.  Flexible scheduling and work arrangements provided pursuant to the transition back-to-work benefit include, for example, working from home, delayed start and/or early departure, and compressed workweek.

**Biological Mothers Provided Superior Parental Leave Benefits**

25.     Pursuant to its Parental Leave Policies, Estee Lauder only provides the transition back-to-work benefit to employees who otherwise qualify for, and are returning from, maternity, adoption or primary caregiver leave.  Employees who qualify for and are returning from secondary caregiver leave do not receive the transition back-to-work benefit.

26.     The Parental Leave Policies' flexible transition back-to-work benefit is provided for the purpose of enabling the employee to balance resumption of work duties and child care and bonding, and to acclimate in his or her return to work from the period of maternity leave, adoption leave, or primary caregiver leave.

27.     Following adoption of the Parental Leave Policies, Estee Lauder continues to provide six to eight weeks of partial to full paid leave to biological mothers for medical or physical limitations attendant to the birth of the child as part of its STD Plan.

28.     Pursuant to the maternity leave provision of its Parental Leave Policies, Estee Lauder provides eligible biological mothers, in addition to any leave taken under the STD Plan, with up to six additional weeks of job-protected maternity leave at full pay commencing upon the expiration of the preceding disability leave, for a total leave period of twelve weeks.

29.     Pursuant to its Parental Leave Policies, Estee Lauder provides eligible biological mothers six weeks of paid maternity leave without regard to, or obligation to claim or demonstrate, any caregiver status as to the new child.

**Biological Fathers Provided Inferior Parental Leave Benefits**

30.     Pursuant to its Parental Leave Policies, Estee Lauder does not enumerate or administer any dedicated paternity leave benefits for biological fathers similar to the maternity leave benefits for biological mothers.

31.     Estee Lauder only provides eligible employees with primary caregiver leave in surrogacy situations.

32.     Estee Lauder only provides eligible employees who are biological fathers with secondary caregiver leave.

33.     Pursuant to its Parental Leave Policies, Estee Lauder provides eligible employees who qualify for secondary caregiver leave with two weeks of paid parental leave to be used within the first six months of the arrival of the child, and such employees do not receive the transition back-to-work benefit.

**Defendant Assigns Benefits According to its Employees' Sex**

34.     Eligible employees wishing to use benefits under Estee Lauder's Parental Leave Policies must notify the company's Disability Management Team ("DMT") of their intentions via e-mail, phone or fax.

35.     The DMT centrally administers Estee Lauder's Parental Leave Policies.

36.     The DMT responds to employee inquiries about benefits under the Parental Leave Policies with an e-mail to the inquiring employee.

37.     In its responding e-mail, the DMT provides a copy of the company's Parental Leave Request Form for the eligible employee to complete and directs the employee to the type of leave for which they are eligible for purposes of completing the Request Form.

38.   In responding to an eligible employee's inquiries to use benefits under the Parental Leave Policies, the DMT notifies eligible biological mothers to request maternity leave when completing their Parental Leave Request Form.

39.   In responding to inquiries to use benefits under the Parental Leave Policies, the DMT notifies eligible biological fathers to request secondary caregiver leave when completing their Parental Leave Request Form.

### In Accordance with its Policies Defendant Assigned Inferior Benefits to Sullivan

40.   On or about June 15, 2015, Charging Party Christopher Sullivan notified the DMT of the birth of his biological child and his intent to take primary caregiver leave under the Parental Leave Policies.

41.   The DMT advised Sullivan that primary caregiver leave is only available in surrogacy situations.

42.   The DMT also advised Sullivan that as a biological father he must apply for, and was only entitled to receive, secondary caregiver leave.

43.   The DMT thereafter e-mailed Sullivan the Parental Leave Request Form, instructing that he should apply for Secondary Caregiver Parental Leave when completing his Request Form.

### In Accordance with its Policies Defendant Assigned Inferior Benefits to Aggrieved Individuals

44.   Since inception of Estee Lauder's Parental Leave Policies on July 1, 2013, hundreds of eligible biological mothers and fathers have sought and been provided parental leave benefits under the Policies.

45.   Estee Lauder has, pursuant to the content and administration of its Parental Leave Policies, consistently and systematically provided inferior parental leave benefits for purposes of child bonding to biological fathers than to biological mothers.

46.   All eligible biological mothers were provided up to six weeks of paid maternity leave and were entitled to the transition back-to-work benefit.

47.   All eligible biological fathers were provided two weeks paid secondary caregiver leave and were not entitled to the transition back-to-work benefit.

48.   Defendant provided biological fathers inferior parental leave benefits than it provided to biological mothers, based on sex, though such fathers and mothers performed equal work involving equal skill, effort, and responsibility, and performed under similar working conditions when they occupied the following positions:

     a.  3rd Key
     b.  Associate
     c.  Assoc-RSL Mgmt Corp
     d.  Consultant-Beauty
     e.  Coord Process
     f.  Coord Process (Aveda)
     g.  Coord-Account
     h.  Designer Sr
     i.  Developer Web Applications
     j.  Dir Creative Operations
     k.  Dir Design
     l.  Dir Education
     m.  Dir Financial Planning
     n.  Dir GBSC
     o.  Dir Global Supplier Relations
     p.  Director
     q.  ED ECommerce
     r.  ED Indirect Procurement
     s.  Group Leader
     t.  MAC Artist
     u.  Material Handler
     v.  Mgr Counter
     w.  Mgr Finance
     x.  On Call

     y.  Operator Machine
     z.  Order Processing Assoc II
    aa. Partner Salon/Spa Development
    bb. Planner NA Supply
    cc. Planner NA Third Party
    dd. Sales Associate
    ee. Sr Chemist
    ff.  Supv Distribution
    gg. Supv Production
    hh. Team Leader Store
    ii.  VP Finance

49. The minimum qualifications, job duties and requirements of the positions referenced in Paragraph 48 are centrally established and defined.

### Count I:  Title VII Discrimination

50. The EEOC incorporates paragraphs 16 through 49.

51. Since at least July 1, 2013, and on a continuing basis,  Defendant has engaged in nationwide unlawful employment practices harming aggrieved individuals, who are eligible male employees and biological fathers, in violation of Title VII, 42 U.S.C.§ 2000e-2(a).  The unlawful employment practices include, but are not limited to:

    a. adopting the Parental Leave Policies, which discriminate based on sex against aggrieved individuals by affording such individuals lesser paid parental leave and transition back-to-work benefits than are afforded eligible female employees who are biological mothers;

    b. applying the Parental Leave Policies in a discriminatory manner based on sex by actually providing aggrieved individuals lesser paid parental leave and transition back-to-work benefits than are provided eligible female employees who are biological mothers.

52. The unlawful employment practices contained in Count I resulted in loss of equal employment opportunities and/or adverse tangible employment actions and/or harms against the aggrieved individuals.

53.     The unlawful employment practices contained in Count I caused aggrieved individuals

emotional and mental anguish, pain and suffering, stress, and frustration.

54.     The unlawful employment practices contained in Count I were and are done with malice

or with reckless disregard to the federally protected rights of the aggrieved individuals.

### Count II:  Equal Pay Act Discrimination

55.     The EEOC incorporates paragraphs 16 through 49.

56.     Since at least July 1, 2013, and on a continuing basis,  Defendant has engaged in

nationwide violations of Section 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§

206(d)(1) and 215(a)(2), harming aggrieved individuals, who are eligible male employees

and biological fathers, by:

      a.   Adopting and administering its Parental Leave Policies as to eligible
employees nationwide, in a centralized manner constituting a single
nationwide establishment, which discriminate on the basis of sex by
affording and providing lesser wages, in the form of paid parental leave and
transition back-to-work benefits, to aggrieved individuals than are provided
to employees of the opposite sex for equal work on jobs the performance of
which requires equal skill, effort, and responsibility, and which are
performed under similar working conditions.

57.     The unlawful discrimination contained in Count II has and is continuing to result in

Defendant's unlawful withholding of wages due to aggrieved individuals.

58.     The unlawful discrimination contained in Count II was and is willful.

### VII. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

      A.     Grant a permanent injunction enjoining Defendant, its officers, successors,

assigns, and all persons in active concert or participation with it, from engaging in sex

discrimination against aggrieved individuals through the adoption and administration of its

Parental Leave Policies, which discriminate against men in the provision of paid leave and back-to-work benefits.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for aggrieved individuals and equal benefits under the Parental Leave Policies, including paid parental leave and back-to-work benefits, without reducing such benefits as to any employee, and that eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make the aggrieved individuals whole by providing appropriate back pay, inclusive of all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Grant a judgment requiring Defendant to pay appropriate back wages in amounts to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to aggrieved individuals whose wages are being unlawfully withheld as a result of the acts complained of above.

E.     Order Defendant to make whole the aggrieved individuals whose wages are being unlawfully withheld as a result of the acts complained of above, by restraining the continued withholding of amounts owing as back wages with prejudgment interest, in amounts to be determined at trial.

F.     Order Defendant to make the aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

G.      Order Defendant to make the aggrieved individuals whole by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation and frustration in amounts to be determined at trial.

H.      Order Defendant to pay the aggrieved individuals punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

I.      Grant such further legal or equitable relief as the Court deems necessary and proper in the public interest.

J.      Award the EEOC its costs of this action.

## VIII. JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN REAMS
Associate General Counsel

___/s/  **Debra M. Lawrence**_____
DEBRA M. LAWRENCE
Regional Attorney

___/s/  **Maria L. Morocco**_____
MARIA LUISA MOROCCO
Supervisory Trial Attorney
BALTIMORE FIELD OFFICE
10 S. Howard St., Third Floor
Baltimore, MD 210201
maria.morocco@eeoc.gov
Phone: 410.209.2730

THOMAS D. RETHAGE, JR.
PA 203524
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market St., Suite 1300
Philadelphia, PA 19107
thomas.rethage@eeoc.gov
Phone: 215.440.2683
Fax: 215.440.2848

Date: August 29, 2017